[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This matter concerns a lease signed by the parties on August 21, 1987. The plaintiff is Haros Enterprises, a Connecticut General Partnership, which owns the property at 1717 Thomaston Avenue, Waterbury, Connecticut. The defendant is Anthony Buonauto, Jr., who leased premises from the plaintiff under a written lease dated August 21, 1987. That lease was for a term of five years, commencing October 1, 1987, and ending September 30, 1992, at a monthly rental rate of $3,500.00 per month. Under the terms of the lease, the defendant was also to be responsible for any water bill consumed on the leased premises. Henry Filippone, one of the partners of the plaintiff partnership, testified that in approximately 1988, the defendant wanted to add a two bay garage to the existing structure on the leased premises. The plaintiff offered to build the addition and increase the monthly rent. According to Mr. Filippone, the defendant rejected that offer and stated to him that he could build the two bay garage addition for less cost than the plaintiff's offer. The defendant subsequently built a two bay garage to the existing structure at his own cost and continued on paying monthly rent of $3,500.00. Mr. Filippone testified that in May 1990, the defendant asked the plaintiff if he could sublet the subject premises. The plaintiff allowed this and emphasized to the defendant that he was not by reason of the subletting released from any of his obligations under the lease (Exhibit B). The defendant then subleased said premises to M B Motorsport, Inc. In November 1990, the rent CT Page 9068 became in arrears and as a result, the plaintiff sent the defendant a letter dated January 11, 1991, demanding payment in full of all back rent by January 18, 1991. On March 15, 1991, the plaintiff's attorney sent a letter to the defendant stating that the plaintiff was terminating the subject lease effective February 1, 1991, for the failure of the defendant to pay the rent.
Mr. Filippone then testified that the plaintiff entered into a written lease for the subject premises on February 1, 1991, with M B Motorsport, Inc., the same party to whom the defendant had previously subleased the premises with the plaintiff's permission, a Connecticut corporation, for a period of 24 months, commencing February 1, 1991, and terminating on January 31, 1993. The rental was at the rate of $2,500.00 per month. Mr. Filippone testified that the plaintiff leased the premises in 1991 for $2,500.00 per month rather than the $3,500.00 monthly rate the defendant was paying because of the economy.
The plaintiff claims $2,500.00 for rent due for November 1990, $3,500.00 for rent due for January 1991, and $1,000.00 per month for the period February 1, 1991 to September 1992, or $20,000.00. The later claim represents the difference between the rent the defendant owed for that period ($3,500.00 per month) and the rent M B Motorsport, Inc. paid for said period ($2,500.00 per month). The plaintiff also claims $72.31 is due to it from the defendant for past water bills. This totals $26,072.31. The plaintiff also claims attorney's fees of $1,162.50. The lease provides for attorney's fees if incurred by the plaintiff in the collection of past due rent or a breach of lease action.
The defendant testified that the plaintiff had a $3,500.00 rent deposit which he paid on the signing of the lease. Mr. Filippone acknowledged the receipt of this sum by the plaintiff. When questioned, Mr. Buonauto could not recall if he received any rent payments from the sublessee for the month of November 1990 and January 1991. He did admit that he owed $6,000.00 rent for said months and $72.31 for the water bill.
After hearing the evidence in this matter, the court finds the issues for the plaintiff on the complaint. The defendant filed three special defenses to the complaint, but he presented no evidence to support said special defenses. The defendant also filed a counterclaim, but withdrew it at trial.
When a landlord terminates a lease, he cannot sue a tenant CT Page 9069 for rent, but he can sue the tenant for breach of lease. A lease is nothing more than a contract. Thus, as in any other contract action, the measure of damages is that the award should place the injured party in the same position as he would have been in had the contract been fully performed. As a consequence, the unpaid rent, while not recoverable as such, may be used by the court in computing the losses suffered by the plaintiff by reason of the defendant's breach of lease. Rokalor v. Connecticut Eating Enterprises, Inc., 18 Conn. App. 384, 389. Thus, the proper measure of damages is the amount of rent agreed to by the parties. Ibid. 390.
The court finds the defendant owes the plaintiff $26,072.31 in damages less $3,500.00 in a setoff or a total of $22,572.31, plus attorney's fees of $1,162.50 for a total due to the plaintiff of $23,734.81 plus costs.
These damages are arrived at by awarding the plaintiff rent of $2,500.00 for November 1990, rent of $3,500.00 for January 1991, and rent of $20,000.00 ($1,000.00 per month) for the period February 1, 1991 to September 30, 1992, plus $72.31 for a water bill, less the $3,500.00 security deposit paid by the defendant to the plaintiff on the signing of the lease. In addition, the court awarded the plaintiff attorney's fees of $1,162.50 as per the lease terms plus costs.
Judgment may enter accordingly.
WILLIAM. J. SULLIVAN, J.